[Cite as *State v. Wright*, 2025-Ohio-1690.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-10-011 |
| | : | O P I N I O N |
| - vs - | | 5/12/2025 |
| | : | |
| DANIEL V. WRIGHT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2024-2037

Zachary Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

The Bucio Firm, LLC, and Christopher R. Bucio, for appellant.


**SIEBERT, J.**

{¶ 1} Daniel Wright appeals the 24-year indefinite sentence imposed by the Brown County Court of Common Pleas for four counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance. Despite admitting the sentence imposed by the trial court is not "contrary to law," he raises three assignments of error on appeal. We overrule

all of them. First, this court does not have the legal authority to substitute its judgment for that of the trial court's regarding the application of the relevant sentencing statutes. We reject Wright's invitation to change "public policy" from the bench and his arguments the trial court exhibited unfair prejudice. Second, Wright fails to show his sentence was disproportionate to those imposed on similarly situated defendants. Finally, Wright does not demonstrate his former counsel provided him with ineffective assistance. We affirm Wright's sentence.

## I. Background

{¶ 2} Wright was indicted on March 27, 2024, on 27 counts of Illegal Use of a Minor or Impaired Person in a Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(1), second-degree felonies, and 27 counts of Pandering Obscenity Involving a Minor or Impaired Person in violation of R.C. 2907.321(A)(5), fourth-degree felonies. Wright pled guilty to four counts of the second-degree offense, and the remaining 50 counts were dismissed. At the plea hearing, the State made clear it would ask for up to a 24-year prison sentence, and Wright confirmed his understanding of this on the record.

{¶ 3} At sentencing, Wright's attorney reiterated that Wright understood a 24-year sentence could be imposed and had "been made aware as to what the Court has indicated they have sentenced other like and similar defendants in the past." Next, the State summarized the underlying facts of the case, including that Wright "actively search[ed] for[,]" sent, and received hundreds of videos and pictures that depicted children as young as two years old "being violently raped by adults, as they scream[ed] out." Finally, the State emphasized Wright's crimes created, among other human trafficking issues, "a market for children to be raped" and stressed these crimes were not victimless simply because Wright did not physically commit the actions depicted in the

- 2 -

content he possessed. Before sentencing Wright, the trial court stated its hope that the people in the courtroom would "never have to hear a two-year-old scream in anguish as it gets violated over and over" and noted "that child's life will never be the same, much less the hundreds and hundreds [of other victims]."

{¶ 4} At the hearing and in its sentencing order, the trial court confirmed that it considered the record, arguments of counsel, the principles and purposes of sentencing found in R.C. 2929.11, as well as the seriousness and recidivism factors found in R.C. 2929.12. The court emphasized its responsibility to both punish Wright and to protect the public by deterring him and others from committing future crimes. Given the horrific nature and volume of the crimes Wright committed against children, the court stressed that Wright's conduct "was so unusual and so great that no one sentence [could] adequately reflect the seriousness of the conduct." Ultimately, the trial court sentenced Wright to consecutive prison terms on each count which totaled up to a 24-year indefinite sentence.

{¶ 5} Wright now appeals.

## II. Analysis

{¶ 6} **FIRST ASSIGNMENT OF ERROR. DEFENDANT-APPELLANT'S SENTENCE IS UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.**

{¶ 7} Within this single assignment of error, Wright argues that despite his sentence not being expressly contrary to the law, it nonetheless should be set aside on multiple grounds. Wright's arguments lack merit.

### A. Applicable Law and Standard of Review

{¶ 8} R.C. 2929.11 embodies the "overriding purposes of felony sentencing" and requires that sentences protect the public, punish an offender, and promote the rehabilitation of the offender. The statute also requires that imposed sentences balance the seriousness of the crime with its impact on a victim and be consistent with sentences

imposed on similar crimes and offenders. *Id.* at (B). In turn, R.C. 2929.12 gives the trial court discretion on how to balance and comply with these overriding purposes of sentencing while considering various factors regarding the seriousness of the crime and the risk of recidivism, including whether there was serious harm to the victim and whether the offender had a criminal history. *State v. Johnson*, 2024-Ohio-3237, ¶ 7 (12th Dist.).

{¶ 9} As Wright acknowledges, "courts across this State have routinely held" that to prevail on an appeal relating to R.C. 2929.11 and 2929.12, the appellant must present clear and convincing evidence that the sentence is "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). *State v. Iverson*, 2023-Ohio-1601, ¶ 40 (12th Dist.). A sentence is not "clearly and convincingly contrary to law" if the trial court considers the principles and purposes of felony sentencing and the sentencing factors, but the trial court is not required to make any specific factual findings on the record. *State v. Murphy*, 2025-Ohio-63, ¶ 15-16 (12th Dist.), citing *State v. Bryant*, 2022-Ohio-1878, ¶ 20.

{¶ 10} An appellate court does not have the authority to independently weigh the sentencing factors and substitute its judgment for that of the trial court's. *State v. Jones*, 2020-Ohio-6729, ¶ 42. Appellate courts only have the authority to analyze whether an appellant presents clear and convincing evidence showing the trial court imposed a sentence that was "otherwise contrary to law." *See id.*

**B. Compliance with R.C. 2929.11 and 2929.12**

{¶ 11} Wright admits his sentence "does not fall outside the applicable statutory range and is not itself contrary to law." This admission contradicts his own assignment of error. Our review could begin and end with his admission because, as relevant here, R.C. 2953.08(G)(2)(b) only gives appellate courts authority to "increase, reduce, or otherwise modify a sentence that is appealed . . . if it clearly and convincingly finds . . . [t]hat the

sentence is otherwise contrary to law."[1]

{¶ 12} Nonetheless, Wright characterizes the trial court as making "blanket statements" and "brief[ ] mention[s]" regarding the purposes and principles of felony sentencing and the "seriousness of his conduct." He contends that the trial court's lack of analysis and specificity related to these statements did not satisfy its obligations under R.C. 2929.11 and 2929.12. Not so.

{¶ 13} At the sentencing hearing and in its sentencing order, the trial court expressly invoked the relevant statutory factors and emphasized its responsibility to both punish Wright and protect the public by deterring future crimes. The court also emphasized that Wright's crimes, given their horrific nature and volume, could not be adequately punished by a single prison term. Further, the trial court (and the State) stressed what this court has made clear in past opinions—sexually oriented matter involving a minor directly harms the children who are depicted and indirectly contributes to the market for the sexual exploitation of children. *State v. Boggs,* 2020-Ohio-2881, ¶ 14; *State v. Pearce*, 2022-Ohio-2617, ¶ 13 (12th Dist.).

{¶ 14} The trial court's explanations are far more than "blanket statements," and they satisfy the trial court's obligations under R.C. 2929.11 and 2929.12.

## C. Wright's Underlying Arguments

{¶ 15} This court could again stop its analysis here and overrule this assignment of error because the trial court stated it had considered the relevant sentencing purposes and factors related to seriousness and recidivism as required by R.C. 2929.11 and 2929.12. The sentence was not, therefore, contrary to law.

---

1. R.C. 2953.08(G)(2)(a) also permits appellate review if the record does not support the sentence related to several specifically referenced statutes, none of which are relevant here.

{¶ 16} However, this court is concerned about the extent to which Wright also attempts to provide "clear and convincing" support for his position by asserting arguments that either ignore fundamental principles found in Ohio's Constitution or cites to legal authority which directly contradicts his own position. Therefore, we will analyze Wright's underlying arguments to address those concerns.[2]

{¶ 17} First, Wright argues that "as a matter of public policy," trial courts should assign specific weights to the various sentencing purposes, the seriousness of the crime, and the recidivism factors. The Ohio Constitution frames and delineates the separate powers held by each branch of our State's government, and the judiciary's role is clear— absent a constitutional concern, it interprets the law as written by the legislature. Ohio Const. Art. IV, § 1; *Beagle v. Walden*, 78 Ohio St.3d 59, 62 (1997). In turn, legislative power is wholly vested in the General Assembly, or in the people themselves. Ohio Const. Art. II, § 1. The legislature is thus the "ultimate arbiter of public policy." (Cleaned up.) *State ex rel. Johnson v. Ohio State Senate*, 2022-Ohio-1912, ¶ 10, quoting *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 39*; see also Berkheimer v. REKM, L.L.C.*, 2024-Ohio-5741, ¶ 12 (Fischer, J., concurring) ("Public policy is the province of the legislative—not the judicial—branch of our government.").

{¶ 18} Consistent with Ohio's Constitution and established law, this court refuses Wright's invitation to dictate public policy by judicial fiat. His arguments should not be made to an appellate court, but to the General Assembly or his fellow Ohio citizens, as they are the only entities constitutionally entrusted with the power to change the statutory obligations in R.C. 2929.11 and 2929.12.

---

2. Among these arguments is the unsupported assertion that upholding his sentence will affect his constitutional right to be free from cruel and unusual punishment. Pursuant to App.R. 12(A)(1)(b) and App.R. 16(A)(7), we will not address this undeveloped claim.

**{¶ 19}** Next, Wright asserts the trial court did not properly weigh his lack of a prior criminal record and his "proven ability to function as a law-abiding citizen over the past forty-three years of life." He argues this improper weighing provides him with clear and convincing evidence that "the trial court's judgment was clouded by unfair prejudice which did not support the sentence."

**{¶ 20}** But Wright's own legal citations are fatal to this assertion because, just as Wright admits that his sentence was not "itself contrary to law," he cites to law finding that the factors included in R.C. 2929.11 [and R.C. 2929.12] are "nonexhaustive" and the trial court can "consider and weigh any other factor it pleases." *State v. Theodorou*, 2017-Ohio-9171, ¶ 11 (8th Dist.). Further, Wright's briefing notably omits the next critical holding from *Theodorou*—"the weight to be given to any one sentencing factor is purely discretionary and rests with the trial court." *Id.*[3]

**{¶ 21}** Wright also relies on *State v. Marcum* for his position that our review of the record would provide clear and convincing evidence that "the trial court's judgment was clouded by unfair prejudice." *See generally* 2016-Ohio-1002. In that case, the Ohio Supreme Court stated that appellate courts may set aside or modify a sentence despite not being contrary to law if it "finds by clear and convincing evidence that the record does not support the sentence." *Id.* at ¶ 23. But Wright fails to acknowledge that the Ohio Supreme Court later clarified that this statement in *Marcum* was dicta, and that an appellate court did not have the authority to independently weigh the sentencing factors and substitute its judgment for that of the trial court's. *Jones*, 2020-Ohio-6729 at ¶ 27, 42, citing R.C. 2953.08(G)(2).

---

3. We note that citations to our sister district are not binding on this court, but we agree with the Eighth District's analysis of the statutory language and obligations (or lack thereof), as stated in *Theodorou* at ¶ 11.

**{¶ 22}** Far from providing the clear and convincing evidence his assignment of error requires, Wright's own cited legal authorities undermine his position or have been negated by the Ohio Supreme Court.

**{¶ 23}** The trial court satisfied its statutory obligations under R.C. 2929.11 and 2929.12, and Wright's sentence was not contrary to law. Despite this, Wright asks this court to act outside its authority under Ohio law by either judicially implementing his preferred public policy or by second-guessing the trial court's judgment regarding how to apply the sentencing principles and factors of R.C. 2929.11 and 2929.12 to him. Ohio law, including law Wright cites, explicitly prohibits either action by this court, and we will do neither.

**{¶ 24}** Wright's first assignment of error is overruled.

**{¶ 25} SECOND ASSIGNMENT OF ERROR. DEFENDANT-APPELLANT'S SENTENCE IS DISPROPORTIONATE TO OTHER SENTENCES IMPOSED FOR SIMILAR CRIMES UPON SIMILARLY SITUATED OFFENDERS.**

**{¶ 26}** Wright argues his sentence is "unduly punitive and skewed, compared to his peers" and ignores that Wright had no prior criminal record and "was simply a hard-working, taxpaying U.S. citizen"[4] before being indicted on 54 counts of possessing and using material depicting nude, young children and pandering obscenity, including images of violent rape that, again, involved young children.

**{¶ 27}** Ohio courts have long held that "[a] felony sentence should be proportionate to the severity of the offense committed, so as not to 'shock the sense of justice in the

---

4. Such statements in Wright's first and second assignments of error seem to ignore the period of time when he was accumulating and sending images of nude, young children being sexually violated but before law enforcement caught him doing so. The record does not show an instantaneous shift from law abiding honesty to illegally possessing such abhorrent images. These actions, presumably, occurred over an indeterminate period of time.

community.'" *State v. Smith*, 2011-Ohio-3051, ¶ 66 (8th Dist.), quoting *State v. Chafin*, 30 Ohio St.2d 13, 17 (1972). Under Ohio law, Wright has the burden of producing evidence to show how his sentence is "'directly disproportionate'" to the sentences other offenders with similar records have received for the same offenses. *Id.* at ¶ 66, quoting *State v.. Breeden* 2005-Ohio-510, ¶ 81 (8th Dist.).

**{¶ 28}** Here, Wright was convicted of four second-degree sex offense felonies involving young children, and none of the cases he cites to as evidence of disproportionality are legally or factually similar to his own. *State v. Warton*, 2021-Ohio-2502, ¶ 7 (5th Dist.) (defendant pled to fifth- and fourth-degree sex offenses involving teenage minors); *State v. Duncan*, 2016-Ohio-5559 (12th Dist.) (involved various robbery related felonies and post release control violations); and *State v. Lugo-Casiano*, 2023-Ohio-3711 (8th Dist.) (defendant pled guilty to fourth- and third-degree felony after eluding traffic stop while operating ATV).

**{¶ 29}** This court also notes that Wright's counsel confirmed Wright's understanding at the sentencing hearing that he understood a 24-year sentence was consistent with the sentences of other "like and similar defendants before the trial court in the past." So, at sentencing Wright agreed his potential 24-year sentence was not disproportionate to other similarly situated offenders, but now argues it was disproportionate, without positing supporting evidence.

**{¶ 30}** Put simply, Wright fails to meet his evidentiary burden to show his sentence was disproportionate when compared to other sentences imposed for similar crimes upon similarly situated individuals. He has not demonstrated, through evidence or relevant sentence comparisons, that the community's sense of justice should be shocked by his 24-year prison sentence for possessing pictures of screaming toddlers being violently raped by adults.

{¶ 31} Wright's second assignment of error is overruled.

{¶ 32} **THIRD ASSIGNMENT OF ERROR: THE ACTIONS AND OMISSIONS OF DEFENDANT-APPELLANT'S TRIAL COUNSEL IN THE AGGREGATE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.**

{¶ 33} Wright asserts that his trial counsel provided him with ineffective assistance because "at no time during the Plea Hearing was [he made aware of] the full gravity of his prospective plea." Wright also notes, without any detail that provides relevance, context, or substantiation, that his trial counsel "is currently the subject of a disciplinary action with the Ohio Bar's Board of Professional Conduct."

{¶ 34} "To prevail on an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that (1) his [or her] counsel's performance was deficient and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty." *State v. Arledge*, 2019-Ohio-3147 ¶ 8 (12th Dist.), citing *State v. Bird*, 81 Ohio St.3d 582, 585 (1998). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness" based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, 688, 690 (1984). In turn, prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A defendant's failure to sufficiently show either *Strickland* prong is fatal to a claim of ineffective assistance of counsel. *State v. Lloyd*, 2022-Ohio-4259, ¶ 31, citing *Strickland* at 697.

{¶ 35} At best, Wright's arguments are unconvincing. At worst, they are misleading and disingenuous. The record makes clear that before Wright pled guilty, the State asserted that it would ask for up to a 24-year prison sentence, and Wright confirmed his

understanding of the State's assertion on the record. Further, Wright's trial counsel reiterated at sentencing that Wright understood a 24-year sentence could be imposed, consistent with the sentences of other "like and similar defendants before the trial court in the past."[5] Wright not only fails to show his counsel's performance was objectively deficient but also fails to show that he would not have pled guilty or the outcome of his plea and sentencing would have been different without these (alleged, but unproven) deficiencies. Such failures defeat his claim of ineffective counsel.

{¶ 36} Finally, Wright provides no reason for this court to believe that the purported, unnamed disciplinary action involving his trial counsel affected this case. His allegation of this disciplinary action, without any attempt to show why it relates to Wright's assignment of error, amounts to nothing but an inappropriate, ad hominem attack. Such an attack has no legal merit.

{¶ 37} This final assignment of error is overruled.

{¶ 38} Judgment affirmed.

{¶ 39} HENDRICKSON, P.J., and BYRNE, J., concur.

---

5. We acknowledge there is nothing in the record to demonstrate what "like and similar" sentences the trial court previously imposed, but it is Wright's burden on appeal to demonstrate that it was not. As previously noted, Wright failed to meet his burden.