[944 NE2d 1137, 919 NYS2d 498]

The People of the State of New York, Appellant, v James O. Boothe, Respondent.

Argued January 5, 2011; decided February 24, 2011

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* New York City (*Hannah Stith Long, Barbara D. Underwood* and *Roseann B. MacKechnie* of counsel), for appellant. Penal Law § 176.05 (2) read in light of the unambiguous legislative intent, added a new type of fraudulent insurance act to the conduct previously punishable as insurance fraud. (*Carney v Philippone,* 1 NY3d 333; *Consedine v Portville Cent. School Dist.,* 12 NY3d 286; *Matter of ATM One v Landaverde,* 2 NY3d 472; *Matter of Yolanda D.,* 88 NY2d 790; *People v Santi,* 3 NY3d 234; *Matter of Pirro v Angiolillo,* 89 NY2d 351; *People v Versaggi,* 83 NY2d 123; *Matter of M.B.,* 6 NY3d 437.)

*Stillman, Friedman & Shechtman, P.C.,* New York City (*Paul Shechtman* and *Daniel V. Shapiro* of counsel), for respondent. James O. Boothe cannot be prosecuted for insurance fraud because he did not commit a "fraudulent insurance act." (*People v Ferone,* 136 AD2d 282; *Gillespie v Zittlosen,* 60 NY 449; *People v Briggs,* 193 NY 457; *Pavelic & LeFlore v Marvel Entertainment Group, Div. of Cadence Industries Corp.,* 493 US 120; *People v Finnegan,* 85 NY2d 53; *Lamie v United States Trustee,* 540 US 526; *People v Versaggi,* 83 NY2d 123; *Sexauer & Lemke v Burke & Sons Co.,* 228 NY 341; *People v Sansanese,* 17 NY2d 302; *People v Green,* 68 NY2d 151.)

**OPINION OF THE COURT**

Pigott, J.

Defendant, the chief operating officer and executive vice-president of a managed health care provider, was indicted on charges that included two counts of insurance fraud in the first degree (Penal Law § 176.30). A person is guilty of that offense "when he commits a *fraudulent insurance act* and thereby

wrongfully takes, obtains or withholds, or attempts to wrong-fully take, obtain or withhold property with a value in excess of one million dollars" (emphasis supplied). The indictment charges that defendant committed "fraudulent insurance act[s]" in 2003 when he submitted marketing plans to Medicaid that he knew contained materially false information.

As relevant here, Penal Law § 176.05 (1) provides that a person commits a "fraudulent insurance act" when he:

> "knowingly and with intent to defraud presents . . . any written statement as part of, or in support of, an application for the issuance of, or the rating of a commercial insurance policy, . . . or a claim for pay-ment or other benefit pursuant to an insurance policy . . . for commercial or personal insurance which he knows to: (i) contain materially false in-formation concerning any fact material thereto."

Prior to 1998, the above was the only definition contained in section 176.05, which is entitled "Insurance fraud; defined." In 1998, however, the Legislature amended a number of state laws to expand health coverage and eligibility for children through the Child Health Plus program and Medicaid, and concomitantly amended the Penal Law to "strengthen[ ] the State's ability to deter Medicaid fraud and abuse" (Budget Report on Bills, Bill Jacket, L 1998, ch 2, at 3). As part of these amendments, the Legislature added a new subdivision to section 176.05, namely, "fraudulent *health care* insurance act" which, as relevant here, a person commits when he:

> "knowingly and with intent to defraud, presents . . . any written statement . . . as part of, or in support of, an application for the issuance of a health insurance policy, or a policy or contract or other authorization that provides or allows coverage for, membership or enrollment in, or other services of a *public or private health plan,* or a claim for pay-ment, services or other benefit pursuant to *such policy, contract or plan,* which he knows to:
>
> "(a) contain materially false information concerning any material fact thereto" (Penal Law § 176.05 [2] [emphasis supplied]).

While amending section 176.05 in this fashion, the Legislature failed to amend the substantive offense provisions to include a "fraudulent health care insurance act." Specifically, Penal Law

§§ 176.10 through 176.35—which describe six degrees of insurance fraud—all contain the core requirement that the defendant "commit[ ] a fraudulent insurance act." At the time, the State Division of Criminal Justice Services warned that the proposed amendments to section 176.05 "may not accomplish their apparent objective of including certain activities related to health care insurance within the scope of existing insurance fraud offenses" because the new legislation did not include "fraudulent health care insurance act" as an alternative means of committing the crimes spelled out in sections 176.10 through 176.35 (Letter from St of NY Div of Crim Justice Servs, July 9, 1998, Bill Jacket, L 1998, ch 2, at 32).

In the case before us, defendant, noting these deficiencies, moved to dismiss the insurance fraud counts, asserting that he did not commit a "fraudulent insurance act" as charged in the indictment and defined by the Penal Law. As relevant to this appeal, Supreme Court granted defendant's motion and the Appellate Division affirmed (68 AD3d 402 [2009]). A Judge of this Court granted the People leave to appeal, and we now affirm.

A "fraudulent insurance act," as defined by statute, is limited to certain defined commercial and personal insurance. In fact, the People concede that the marketing plans allegedly submitted by defendant do not fall under this definition. Rather, they argue that a "fraudulent *health care* insurance act" (emphasis supplied) is a "species" of "fraudulent insurance act," and that section 176.05 (2) can be read as specifying an expanded set of "fraudulent insurance acts" relating to health care that are punishable under sections 176.10 through 176.35. We reject that contention.

Here, the Legislature plainly failed to criminalize the conduct at issue. This statutory infirmity cannot be overlooked, nor can it be remedied through statutory interpretation. It is well settled "that courts are not to legislate under the guise of interpretation" (*People v Finnegan*, 85 NY2d 53, 58 [1995], *cert denied* 516 US 919 [1995], citing *People v Heine*, 9 NY2d 925, 929 [1961]). If this deficiency is to be corrected, it must be done through legislative action, as the Legislature is better equipped to correct any deficiencies that might exist (*see Bright Homes v Wright*, 8 NY2d 157, 162 [1960]).

In fact, that is the precise action the Judicial Conference of the State of New York proposed in its 2003 Legislative Agenda

report, noting that the Chief Administrative Judge, in accordance with his responsibilities set forth in Judiciary Law § 212 (1) (g), should "at the recommendation of his Advisory Committee on Criminal Law and Procedure, . . . recommend repair of this [legislative] oversight so that a fraudulent health care insurance act is included as a fraudulent insurance act and thereby constitutes a crime of insurance fraud" (Judicial Conference of the State of New York, The Judiciary's 2003 Legislative Agenda, at 63-64 [Jan. 2003]). Because there has been no such repair, a "fraudulent health care insurance act" is not included within the definition of "fraudulent insurance act" and therefore defendant did not violate Penal Law § 176.30. Therefore, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed.